We call the matter of the United States of America v. Juan Ramos. Mr. Zosman, you're appearing for the government as appellant. Yes, Your Honor. Good afternoon. May it please the Court. Robert Zosman on behalf of the government. Your Honor, I'd like to reserve five minutes for rebuttal. Yes, granted. Thank you, sir. The district court erred in this case in ruling that aggravated assault with a deadly weapon in violation of Pennsylvania law is not a crime of violence under the career offender provision. As we laid out in our briefs, there are two paths to our conclusion. Either would result in reversal of the district court, one under the elements clause of the career offender definition, and the other under the law enforcement definition. I'd like to begin by asking what is actually a factual matter. That goes to Ramos' contention that the information does not necessarily show that he was convicted of Section 2702A4. The judgment of conviction, as I read it, does say only guilty as to F-2. What do you make of that? Well, it's actually very clear, Your Honor. There are two paragraphs in the charging document. One is a verbatim statement, word for word, of A1, which is a first degree aggravated assault offense. The other is a verbatim, word for word, statement of A4, which is what we're dealing with here, which is a second degree felony offense at the time that he was convicted. I'm not sure it's entirely clear if what we're describing is the particularity with which an information can be drafted, but I am inclined to agree with you that within the four corners, the question is answered. Basically, F-2 can only refer to that second paragraph, and thus he was convicted under A-4, which in our view is a divisible aggravated assault offense, but divisibility for purposes of the elements clause does not matter. So is the statute divisible between the first degree offenses and the second degree offenses? Yes, Your Honor, and the parties don't disagree about that, and the reason is that they have different penalties under Pennsylvania law, and so everybody would agree that two different subparts that have different penalties are different elements as the Supreme Court has explained it. And of course, our questions are necessarily directed to the 1998 version of the statute. That's correct. It's a much different looking statute than it was when I was signing these informations in the 1970s and early 80s. It's different, but it probably won't be too different as we live through the slog of the categorical approach, because what they've really done is they've just added lots of provisions now that talk about specific classes, but it still has the bodily injury requirement, which really is decisive as far as the elements clause goes. But if the statute that we're dealing with, as Your Honor says, in 1998, the only F-2 offenses, as the court found, were A-3 through A-6. For purposes of the elements clause, it doesn't matter whether it's divisible or not on that level, because every provision requires the threat or the attempt to use bodily, to inflict bodily injury. And as this court held in Chapman, that equals physical force under the elements clause, and that pretty much carries the day. I was just about to ask, is that game set and matched, as Chapman, as you characterize it, carry the day for you? And do we stop? It does. I remember many times hearing Judge Barry say, that game's set and matched. I'm glad that tradition is carrying on. We usually attribute it to her, and I appreciate your covering for me in doing just that. This court has decided this in not-precedential opinions, and of course, this comes up with such frequency now, that we would appreciate a precedential resolution. In the Pitts case, in 2016, this was offered by Judge Roth. This was a not-precedential case that addressed A-3, which is the infliction or attempt to inflict bodily injury on a police officer or firefighter. And Judge Roth wrote in the Pitts case, Pitts was convicted of intentionally or knowingly causing bodily injury to a state officer. This fits comfortably within the sentencing guideline definition of a violent crime as any crime, the court has as an element the use, attempted use, or threatened use of physical force against a person of another. And then more recently, in the Lewis case, again, Judge Roth had the fortune or misfortune to be on this panel again. In the Lewis case in January of this year, the court in a not-precedential decision on plenary review, resolved the exact issue before this court now regarding A-4, holding that it is a crime of violence under the Elements Clause. The only argument that I believe the defense has presented in response is relying on this Thomas case. I could say a lot about Thomas, this case of starvation of a child, as to whether that controls the interpretation of aggravated assault in Pennsylvania. But Thomas is a different, it is A-1, it is the first degree aggravated assault, which may be committed recklessly. And in the Lewis case, that's what the panel decided. It said Thomas doesn't apply because it involves a different partner. And then it says in any event, our court has rejected the argument that causing bodily injury or death does not necessarily require a use of violent force, which is Chapman. So yes, this pretty much is a game-setting match I would respectfully suggest with regard to the Elements Clause. Have you seen the very, very recent submission from the Appellees? Yes, sir. And we responded, and you're referring to the letter? Yes. Right. So that goes to the Enumerated Offense Clause, which I've been suggesting we don't have to reach, but it would lead to reversal as well. I understand, and I wasn't getting to that yet, because what we have is a letter brief, but a motion first asking that we accept it. And I wanted to inquire as to your position if the government was objecting to our granting. We do not object. This is a fast-moving area, and as I said, there are numerous, numerous cases before this court. And to the extent we can resolve these legal issues, it would be very helpful. And what we have found in the avalanche since Johnson was decided is that here in Pennsylvania, the most frequent predicate offenses that we seem to be litigating are robbery under state law and aggravated assault. And so to the extent we can resolve those, it really will resolve an innumerable number of cases. So no, we have no objection. Excuse me. In the Enumerated Offense view of the case, are the appellees correct in saying that in Pennsylvania, the subsection is not pled, it is 2A, but not 2A3, 2A4, 2A5? Is that proper pleading? Is that a customary way in Pennsylvania to charge aggravated assault, not to include the subsection defining with a deadly weapon or against a police officer? It does not appear to be common, Your Honor. The defense identified one case, one Superior Court case in which that happened, and then the court had to decide which provision was the subject of the conviction. But what we see, the state Supreme Court has never addressed is this an element. What we do see, I don't want to interrupt Judge. No, what I was about to say is, the fact of the matter is, I can say historically, it is not uncommon, but what has occurred and what I have seen occur over decades in Pennsylvania is, at the bottom of the information form is a citation, and it's a general citation to A1 or A2, but as you pointed out in one of your earlier arguments here, it's answered by what is actually specifically alleged in the body of the information. So that leaves it, but it's not really good pleading, and it does happen with some frequency. Right, and one of the many, many problems with applying the categorical approach is we're deciding federal law based on, as Your Honor says, is this good pleading or bad pleading? What difference does prosecutorial practice make to the determination we have to make pursuant to the categorical approach? Well, so the Supreme Court in Mathis says that in looking for whether something is an element or the means, one being divisible, one not, that you can take a peek at the state record, and in that sense, prosecutorial charging might make a difference. Here, as I've said, the charging is explicit. They only charge A4 among F2 offenses. I'd also point out that the state Supreme Court has never had any reason to address whether this is an element or means, because they don't even use those terms. But if you do, I did a Westlaw search when we prepared our brief to look at old Pennsylvania cases where aggravated assault, deadly weapon, and the word element appear in the same paragraph. And what you'll see maybe 100 times is that courts routinely refer to the deadly weapon as an element that the state has to prove. And that's typical, that's traditional in jurisprudence, that a deadly weapon is an aggravated factor that the state has to prove beyond a reasonable doubt to change an assault into an aggravated assault. That's not true just in Pennsylvania, it's true everywhere. And so it would be quite stunning to say that this is just one means along with, say, somebody being a school teacher, and that a jury could be instructed. Or a school director, as the statute now allows. That's right, and prison people and all sorts of other people. So can you see a jury being told what assault is, and then it's aggravated if it's a school teacher or a prison employee or a director, or they used a deadly weapon. Ladies and gentlemen, have at it, just let us know whether this is aggravated assault or not. It doesn't happen. This is an element of a separate offense. Judge Ross, do you have any other questions? I would simply like to express my concern that when we see this man was charged with the contortions of a categorical approach, when it's very clear that what he pled to was a crime of violence, and it's like arguing about how many angels can dance on the head of a pin. I would hope that someday, as Judge Jordan expressed in the Chapman case, that we can look at these things realistically rather than with a particular pattern we have to follow. Well, I think my views of the categorical approach are well known to the members of this court. It is the most strange sentencing doctrine I've faced in my career, in which people are sentenced not based on what they did, but based on what some other hypothetical person might do to violate the same statute that they happen to have violated in the past. Judge Ross, the one hope I could express is we are bound by the Supreme Court, and the Supreme Court has given us this categorical approach. Congress could address it, so that's one hope. The other is in the DeMaio decision with the Supreme Court. Is it a very good hope? Sure, of course. Sorry. No, that's fine. But in the DeMaio decision last week regarding Section 924C, there were four justices who expressed openness basically to this court's Robinson decision, which I believe so, yes, Your Honor, that with respect to 924C, at least, where you're looking at the offense in the same case, that the judge can consider the facts and doesn't have to use the categorical approach. So maybe that's a wedge in the four justices recognized in DeMaio. I can tell you that the Justice Department is taking up that challenge, will now be arguing in 924C cases throughout the country, not just in the Third Circuit, based on what those justices have said, but in this case, where we're dealing with a past offense. But, of course, we're very open to your views, Your Honor. Thank you very much, Mr. Zaghi. We'll now get back on rebuttal. We'll hear from Ms. Freeman. Good afternoon, Your Honors. Arianna Freeman for Appellee Juan Ramos. I want to talk to the court today about indivisibility, which I think is a very important issue for the court to address. Mr. Zalesmer stated that the government is urging the court to address this matter in a presidential opinion, and I do think that it is important to do so, but it is also important to keep in mind that when we're looking at this aggravated assault statute, we're looking at it for all defendants who are convicted of aggravated assault, not just Mr. Ramos, which is one of the reasons why the PEEQ is really just a very small part of the analysis the court has to conduct when deciding whether second-degree aggravated assault is an indivisible offense and is categorically a crime of violence. And I can explain that when I say that, I mean that the PEEQ at the charging documents, and Mr. Ramos' case, is one example of the thousands of times that aggravated assault has been charged in Pennsylvania courts. And so Your Honor has expressed, the government has expressed a view that here he was charged with one subsection, and therefore, and he was convicted of F-2, therefore it must be divisible into the fourth subpart. However, there are other defendants who are not charged like that, and we've provided more than one example, and there are numerous examples out there. That leads to the question that I asked Mr. Zosmer at the outset. Do I understand you to be suggesting that there's some ambiguity in the face of the information as to what Mr. Ramos actually pleaded to? Yes. We have only partial records here. We have him being charged with, in the bill of rights, A-1 and A-4 of the statute. However, we only have, on the guilty plea document, we only have F-2. And a lot of things can happen between the charges. If you have F-2 and you have A-4, why isn't that entirely consistent then with the plea to A-4? Because Your Honor, there are so many things that can happen between the time when a defendant is charged with an offense and when he pleads guilty to an offense. He can negotiate with the prosecution over issues about what the prosecution can prove, and he may agree to another part of the F-2 events rather than the original one that he was charged with. He may negotiate for purposes of the sentencing guidelines. We just don't know with these partial documents what exactly happened. You're right. There are many things we don't know, but let's focus on what we do know. How many first-degree felonies was he charged with in this case? In this case, he was charged with, if I understand Your Honor's question, How many first-degree felonies was he charged with? Just the one. And how many second-degree felonies was he charged with? Just the one. So he was charged with one first-degree felony, and he was charged with one second-degree felony. And he pled guilty to? He pled guilty to F-2. A second-degree felony. A second-degree felony. So, not only is it consistent, not to pick nits with my chief, but not only is it consistent, but it would seem to necessarily follow that he had to have been convicted of A-4 if he was only charged with one second-degree felony, and he was convicted of one second-degree felony. Or are you arguing that he was convicted of a felony with which he was never charged? I am arguing that he was convicted of an indivisible second-degree felony aggravated assault. But even if that second-degree felony aggravated assault were indivisible, it would be unclear from the limited documentation that we have, no written or oral plea colloquy, nothing where he describes what elements he's pleading to. And it is insufficient there to determine with certainty, with the certainty that the Supreme Court requires that he has been convicted of the A-4 version. But as Mr. Zausmer said, the various subsections of an aggravated assault all involve the use of force. And so say, for instance, they decided that it was a school teacher who he smashed in the face with a brick instead of a little girl and charged him, or a child, and charged him under one of the other subsections. Isn't that still a crime of violence? Aren't all the subsections of aggravated assault basically intentional use of physical force to inflict injury or to attempt to inflict injury? Your Honor, they are not. In United States v. Chapman, this Court did not hold that any time bodily injury is inflicted, violent physical force has been used. That is nowhere in Chapman. All Chapman stated was that where an instrument has been used, whether there is a direct application of force or an indirect application, as through pulling a trigger on a gun, that constitutes force. But Chapman states very clearly that there must be an intentional use of an instrument. And here we have provided the Court with examples, primarily through Commonwealth v. Thomas, that omission. Well, okay, putting aside Commonwealth v. Thomas, I find that very unpersuasive. What in addition to that case can you present to us? Your Honor, we also presented the case of Commonwealth v. Taylor. We have some additional cases that are not in the briefs, but I don't know that that would be prudent to mention at this point. But the point is that the courts have found, actually in Pennsylvania, that omission, failing to act in a criminally culpable way, can cause bodily injury. And in fact, when we look at the definition of force from Johnson 2010, we know that failing to act cannot constitute violent physical force through concrete bodies. But here we're talking about intentional failing to act to cause that particular injury, which is very different from negligent failure to avoid injury. I understand, Your Honor. There is an intent element here, which you don't have in the cases that you're talking about. There is an intent element, but what is not required in Pennsylvania is that an instrument be used to inflict force. I've seen examples of that in the A1 context, and that is very easily transferable to the second-degree felony context. And I will note, just for clarity, I'm afraid that there was some confusion in the briefing with regard to the version of the offense that Mr. Ramos was convicted under. In fact, the version was enacted by public law 478 on July 2, 1996. And in that version, it is subsections A1 through 6, but specifically I would draw the Court's attention to subsection A5, which is the school personnel. But at that time, that version of the offense also includes, as an aggravating factor, students, elementary or secondary school students. So when we're talking about withholding without force, it's very important that these terrible crimes that have happened to children because they are unable to provide for themselves with sustenance or necessary medical care, medicine, that can certainly occur with regard to elementary school students under the A5 version of the F2 offense. So I understand you're trying to convince us that it's not divisible, but assume it is divisible, then what? If it is divisible, then I do believe that our position is that the several documents are insufficient to demonstrate with certainty that Mr. Ramos was convicted of the A1 version of the offense. So it all comes back to whether he was convicted of A4. If there's some confusion or ambiguity or lack of clarity that he's convicted of A4, you win. And if he was convicted of A4 and it's clear, then you lose, or do you have a fallback argument after that? If he was convicted of A4 and it is a divisible offense, then the Chapman decision would control because of the deadly weapon portion of that subsection. We do take exception with Chapman with regard to the holdings of Chapman, but it is controlling law. However, I would note when the court is deciding whether Mr. Ramos was convicted under A4 and if there is enough certainty for that, we not only need to consider Taylor's requirement that the court have less certainty, but in fact, the validity which the district court disavowed in its opinion is applicable to the court's determination of whether a prior conviction qualifies as a crime of violence under the sentencing guidelines. In the United States v. Fleming, this court addressed that in 2010 in a presidential opinion. So if there is any ambiguity, then that has to in order to the defendant's favor. Ms. Freeman, am I correct that your client is scheduled to be released from custody on September 1st? I don't have the exact date. Before me, he was released to a halfway house earlier this month. It was about two weeks ago, and he is in residential entry right now in Philadelphia. I'm curious because I wonder if imminent release or release in the very near future calls for expedition or expediting on our part in terms of deciding this matter. I would just draw the court's attention to the district court's opinion in which the court stated that he expected that he would impose the same sentence even if the clear offender guideline were applicable. So I think that we can, you know, I do acknowledge that a resentencing would be required, but I think that may be a formality in light of the rehabilitation and other factors that Mr. Ramos presented during his resentencing hearing last year. Thank you, and I trust that Mr. Zosma will speak to that as well. Thank you very much, Mr. Freeman. Mr. Zosma? Well, Your Honor, briefly, to be clear about Chapman, Chapman involved Section 876 of the Federal Criminal Code, which is a threat to injure. If it is anything about any object that needs to be used, it simply said making a threat to cause bodily injury is the use of physical or the threat of physical force under the elements clause. Again, that's decisive. In fact, under 876, as Your Honors are aware, most prosecutions, the perpetrator and victim aren't even in physical proximity to each other. You send the threat through the mail or email or what have you. It doesn't even compare to A4, which is the attempt or actual infliction of bodily injury using a deadly weapon. So there is no gap here between this and Chapman, and Chapman's claim holding is very clear, and it's controlling. And so what my friend at Freeman falls back to is saying that, well, this could be omission, that if all we know is second-degree felony, we know that bodily injury is required for everyone A3 through A6, and she says, well, maybe it could be omission like Thomas. And that's just not true. There has never been a Pennsylvania case that has held that second-degree aggravated assault in Pennsylvania can be committed by omission. There's only the Thomas case involving A1, and the Supreme Court has said very explicitly in the application of the categorical approach, you do not use what they call legal imagination. If you come up with some far-out hypothetical, such as I can hurt a schoolchild and be guilty of A5 by omission, it has to be tied to something in the case law that's not. And what we're left with, even with A5, is the clear statutory language, attempts to cause or intentionally or knowingly causes bodily injury, just like A3, 4, and 6. So divisibility is not what this is about. What this is about is that he was found guilty of F2. Every F2 aggravated assault in Pennsylvania requires the infliction of bodily injury. Every one of them, categorically, is a crime of violence under the omission clause. It's pretty hard to swallow, though, isn't it, to say that second-degree automatically qualifies and first-degree doesn't? Very hard to swallow. Just like it's hard to swallow. That's upside down. I read the case from the Fourth Circuit that murder in certain circumstances under federal law is not a crime of violence. There are decisions from other courts, and they all turn on the particular drafting of the state statute. I could cite, it would take me a minute, but I could cite other situations in other states where a lesser degree falls within the definition and a higher degree does not. These are strange times. I mean, that's all I can say when we're dealing with the categorical approach, but it's this court's job to apply it to the statute that we have. The final thing I'll say. Reform is above our pay grade. Perhaps. The other thing I'll say with regard to charging, we're seeing this argument now quite frequently that my counselor here ably presents this, oh, well, we're just speculating. The argument is anything can happen at a state court plea proceeding. And so we're seeing it, for example, in the drug area. You have a charging document that says cocaine. You have a conviction for the charge. And then we're told, oh, but bargaining happens all the time. Maybe it was some counterfeit substance they agreed on. That kind of speculation has never carried the day. Well, that's what it is. I mean, the fact that that occurs and occurs with some frequency and occurs right up to the moment that a plea is entered is a fact generally. Whether it's a fact in a particular case, however, is not answered by speculation, as you suggested. It seems to be what we're presented with here. Exactly. And so with regard to a variance, the court did not say in its opinion that it would impose the same sentence. If this court reverses, it said it would consider a variance. And my answer to that is we'd like to be heard. That would be one heck of a variance. We should remand. Is that what you're saying? That's right. The career time to remand charge, I think, starts at 248 months. This sentence is now 105 months, which is not the sentence that Congress and the Sentencing Commission intended for this gentleman who had the record that he had. So we'd like to be heard on that. Do we need to decide this with dispatch? I think that would be helpful. It would probably be in the interest of the defendant. I know it must be difficult for him if he's released and then faces a new sentencing proceeding. So it would probably be in his interest. Anything further? No, sir. Thank you very much, Ernest. All right. Thank you to both of counsel for their helpful arguments. In another case that is an ongoing saga for all of us, we'll take the matter under advisement.